FILED

SEP 18 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

**JIMMY WILSON, §**
**Plaintiff, §**
**§**
**v. § CIVIL ACTION NO. 6:26-CV-00373-KNM**
**§**
**BROOKSHIRE GROCERY COMPANY §**
**d/b/a FRESH BY BROOKSHIRE'S, §**
**Defendant. §**

**JURY DEMANDED**

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Jimmy Wilson, proceeding pro se, files this First Amended Complaint against Defendant Brookshire Grocery Company d/b/a FRESH by Brookshire's. This pleading replaces Plaintiff's original complaint and states specific facts addressing the factual issues raised in Defendant's September 3, 2026 Rule 12(b)(6) motion. Plaintiff pleads facts based on personal knowledge and information reasonably available to him.

**I. JURISDICTION AND VENUE**

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964 to the extent administratively exhausted, and the Age Discrimination in Employment Act (ADEA).

2. Plaintiff pursued the EEOC administrative process and received a Notice of Right to Sue. Plaintiff relies on the EEOC charge, related records, and Right-to-Sue notice for exhaustion. Plaintiff pleads each federal theory only to the extent it is within the administrative record or reasonably related to it.

3. Venue is proper because the employment decisions and conduct alleged below occurred in Tyler and Longview, Texas, within this District, and Defendant conducts business in this District.

**II. PARTIES**

4. Plaintiff Jimmy Wilson was employed by Defendant as a cook at FRESH by Brookshire's Store No. 801 in Tyler, Texas, and later at Store No. 803 in Longview, Texas.

5. Defendant Brookshire Grocery Company d/b/a FRESH by Brookshire's was Plaintiff's employer during the events alleged.

**III. FACTUAL ALLEGATIONS**

Protected condition and medical treatment. Plaintiff was over 40 years old and was approximately 67 years old during the relevant period. Plaintiff had PTSD and other documented medical conditions and was receiving treatment. He disclosed his condition to management and sought schedule flexibility connected to therapy, counseling, physical treatment, and limitations associated with his condition.

March 2025 medical/therapy schedule request. In March 2025, Plaintiff followed advice from his treatment providers and requested Fridays and Sundays off so he could attend counseling and physical-treatment appointments. Management told Plaintiff that the store was too busy to provide the requested Friday/Sunday schedule. Plaintiff was in the process of obtaining medical documentation concerning the need for the requested schedule.

Separate Sunday religious request. After the medical/therapy-related request was not granted as requested, Plaintiff separately requested Sunday off for a religious reason. Management granted the Sunday request. Plaintiff does not contend that an employer must pay an employee for hours not worked. His ADA accommodation claim is based on the separate medical/therapy-related request and the subsequent treatment.

Reduction from approximately five days to three days. The schedule reduction went materially beyond the loss of one Sunday shift. Plaintiff's regular schedule was reduced from approximately five days per week to approximately three days per week, reducing his hours and earnings. Plaintiff alleges that this reduction occurred in the context of his medical accommodation request and was not the accommodation he requested.

Jimmy and Sandro. Managers identified by Plaintiff as Jimmy and Sandro were involved in the workplace circumstances surrounding the schedule reduction and had knowledge of Plaintiff's medical condition and schedule requests. Plaintiff also identifies Edith and Sandra as management personnel with knowledge of his employment circumstances.

March 30, 2025 age-related and appearance-related comments. On or about March 30, 2025, during Plaintiff's employment at Store No. 801, Plaintiff was subjected to comments that he was 'old' and 'fat' and that he needed to lose weight. Plaintiff personally heard the comments. Plaintiff alleges that Jimmy and Sandro were the same managers involved in the schedule circumstances and were present, aware, or allowed coworkers/personnel to make the comments rather than stopping the conduct. Plaintiff experienced the comments as humiliating and degrading.

Public treatment and unequal attendance enforcement. Plaintiff was publicly reprimanded or confronted concerning attendance and tardiness in circumstances he believed were related to his medical condition. Plaintiff observed other employees receive different treatment for attendance issues and schedule changes. Plaintiff complained that his medical condition was being treated differently and that he was being denied reasonable flexibility.

July 21, 2025 HR complaint. On July 21, 2025, Plaintiff submitted a written complaint requesting an investigation into discrimination, retaliation, attendance treatment, medical-condition-related treatment, scheduling, reduced hours, public reprimands, and unequal treatment. Plaintiff stated that his health conditions contributed to lateness and absences, raised accommodation concerns, and identified medical documentation.

July 28, 2025 HR complaint. On July 28, 2025, Plaintiff submitted another written HR complaint requesting a formal investigation into scheduling changes, reduction of hours, public confrontations, disparate disciplinary treatment, and failure to accommodate medical conditions. Plaintiff again identified medical documentation, including records concerning PTSD and treatment.

EEOC activity. On or about July 30, 2025, Plaintiff states that he pursued an EEOC complaint concerning discrimination and retaliation. Plaintiff later requested and received a Right-to-Sue notice. Plaintiff relies on the actual EEOC record for the precise scope of administrative exhaustion.

Post-complaint scrutiny. After Plaintiff raised complaints about discrimination, disability, accommodation, and unequal treatment, he experienced heightened scrutiny, including closer observation of his breaks and restroom periods. Plaintiff understood the increased scrutiny as connected to the workplace complaints and his medical condition.

Sexual-misconduct accusation. Plaintiff was accused of sexual misconduct or sexual harassment. Plaintiff denies engaging in sexual harassment. To Plaintiff's knowledge, Defendant did not provide him with the factual basis or evidence supporting the accusation, and Plaintiff did not receive a disciplinary write-up establishing that he committed misconduct. Plaintiff pleads this as part of the sequence of scrutiny and adverse treatment, not as a separate sexual-harassment claim.

February 13, 2026 transfer. On or about February 13, 2026, General Manager Mike Yates authorized Plaintiff's transfer from Store No. 801 in Tyler to Store No. 803 in Longview. The transfer materially increased Plaintiff's commute and transportation burden, which Plaintiff understood to be approximately 50 miles from Tyler.

February 13 transfer voicemail. Plaintiff received a voicemail concerning the transfer. The voicemail stated that Store No. 803 had approved his schedule and instructed him to report for work at 8:00 a.m. Saturday. The voicemail did not state that Plaintiff had been terminated, suspended, or disciplined, and it did not identify a misconduct finding, policy violation, or disciplinary action.

February 27 monitoring statement. Around February 27, 2026, while working at Store No. 803, Plaintiff's supervisor, Chef Rocky Wright, told Plaintiff that he was being monitored. Plaintiff personally heard that statement. Plaintiff further recalls that Rocky identified manager Monica as the person who had instructed him to

monitor Plaintiff. Plaintiff has a declaration documenting the direct statement about monitoring.

March 1 PTSD-proof request. Around March 1, 2026, Chef Scott directly asked Plaintiff to provide proof that he had PTSD. Plaintiff had previously disclosed the condition and raised medical accommodation issues. The direct request for proof further demonstrates that management at Store No. 803 knew Plaintiff was claiming PTSD.

Transportation hardship and end of employment. The Longview transfer created a materially greater transportation burden. In early March 2026, Plaintiff's vehicle broke down. Because the breakdown occurred after Defendant imposed the substantially longer Longview commute, Plaintiff was unable to maintain the newly imposed commute. Plaintiff's employment ended shortly thereafter. Plaintiff pleads that the vehicle failure was the immediate event, but not the entire context, and that the cumulative working conditions and transfer hardship materially contributed to the end of the employment relationship.

Cumulative course of conduct. Plaintiff alleges that the schedule and income reduction, age-related humiliation, public treatment, heightened monitoring, disability-related questioning, unsupported misconduct accusation, transfer to a substantially more distant store, and transportation hardship form a connected course of adverse treatment following his requests for medical accommodation and complaints about discrimination.

## IV. COUNT I — ADA DISABILITY DISCRIMINATION

Plaintiff incorporates the factual allegations above.

Plaintiff had PTSD, a mental impairment, and alleges that the condition substantially limited one or more major life activities. Plaintiff alternatively alleges that Defendant regarded him as having such an impairment.

Plaintiff was qualified to perform the essential functions of his cook position, with reasonable accommodation where necessary.

Defendant knew of Plaintiff's condition through direct disclosure, treatment documentation, schedule requests, HR complaints, and the later direct request by Chef Scott for proof of PTSD.

After Plaintiff disclosed the condition and sought accommodation, Defendant subjected him to adverse treatment including a substantial schedule and income reduction, heightened scrutiny, disability-related questioning, an accusation of misconduct, and a transfer to Store No. 803.

These facts support a plausible inference that Plaintiff's disability and/or perceived disability was a motivating factor in the challenged treatment.

## V. COUNT II — ADA FAILURE TO PROVIDE REASONABLE ACCOMMODATION

Plaintiff incorporates the factual allegations above.

Plaintiff requested a medical/therapy-related schedule accommodation, including Fridays and Sundays, based on treatment advice and limitations associated with his PTSD and other medical conditions.

Defendant knew of the condition and the need for schedule flexibility. Plaintiff explained the reason for the requested schedule and pursued medical documentation.

Management did not grant the medical accommodation as requested and told Plaintiff the store was too busy to provide the requested Friday/Sunday schedule.

The later Sunday request for a religious reason was separate. The fact that Defendant later allowed Sunday off does not establish that Defendant accommodated the earlier medical/therapy request.

Plaintiff alleges that the subsequent reduction to approximately three days per week was not the requested medical accommodation and materially reduced his hours and earnings.

## VI. COUNT III — ADA RETALIATION

Plaintiff incorporates the factual allegations above.

Plaintiff engaged in protected activity by requesting reasonable accommodation and by complaining to management and HR that Defendant was discriminating against him and failing to accommodate his medical condition.

Defendant knew of that protected activity through management and HR.

After the protected activity, Plaintiff experienced materially adverse treatment including reduced hours and income, heightened monitoring, an unsupported misconduct accusation, transfer to Store No. 803, and a demand for proof of PTSD.

Plaintiff alleges that his protected activity was a motivating factor in the adverse treatment. He relies on the sequence of events and the combination of continuing scrutiny, decision-maker involvement, and later disability-related questioning, not timing alone.

**VII. COUNT IV — TITLE VII RELIGION, TO THE EXTENT EXHAUSTED**

Plaintiff incorporates the factual allegations above.

Plaintiff separately requested Sunday off for a sincerely held religious reason. Defendant granted the Sunday request.

Plaintiff does not allege that the mere loss of wages for hours not worked is itself unlawful. Instead, to the extent the EEOC record encompasses religion-based discrimination or retaliation, Plaintiff alleges that the religious request and subsequent adverse treatment form part of the protected-activity sequence.

Plaintiff pleads this count only to the extent it is within the scope of his EEOC charge and Right-to-Sue notice. If the Court determines that the Title VII religion theory is outside the administrative record, Plaintiff requests that the ADA and ADEA claims be adjudicated independently.

**VIII. COUNT V — ADEA AGE DISCRIMINATION**

Plaintiff incorporates the factual allegations above.

Plaintiff was over 40 and was within the ADEA's protected age group.

On or about March 30, 2025, Plaintiff was called 'old' and 'fat' and was told he needed to lose weight. Plaintiff personally heard the comments. Plaintiff alleges that Jimmy and Sandro, who were also involved in the schedule and workplace circumstances, were present, aware, or allowed the comments to occur.

Those comments occurred in the same employment period as the substantial reduction in Plaintiff's schedule and earnings and other adverse treatment. Plaintiff alleges that age was a motivating factor in the challenged employment decisions and, to the extent required, a but-for cause of the adverse employment action.

Plaintiff seeks discovery concerning who made the comments, who heard them, scheduling decisions, comparators, replacement or reassignment personnel, and Defendant's stated reasons for the challenged actions.

**IX. COUNT VI — HOSTILE WORK ENVIRONMENT**

Plaintiff incorporates the factual allegations above.

Plaintiff alleges unwelcome conduct including age-based insults, public humiliation, heightened monitoring, disability-related questioning, an accusation of sexual misconduct, and other hostile treatment.

The age-related comments were expressly tied to Plaintiff's age and appearance. The disability-related conduct included questioning about proof of PTSD after Plaintiff had already disclosed his condition.

Management knew of the conduct because managers and supervisors participated in, witnessed, were informed of, or were responsible for the relevant conduct, and Plaintiff made written complaints to HR.

Plaintiff alleges that the cumulative conduct altered the conditions of his employment and caused humiliation, emotional distress, financial hardship, and interference with his ability to work.

**X. COUNT VII — CONSTRUCTIVE DISCHARGE, IN THE ALTERNATIVE**

Plaintiff incorporates the factual allegations above.

Plaintiff alleges that the cumulative working conditions became objectively intolerable, including the substantial reduction in hours and income, repeated monitoring, age-related humiliation, disability-related scrutiny, unsupported misconduct accusation, transfer to a substantially more distant workplace, and resulting transportation

hardship.

The Longview transfer was not merely an abstract inconvenience. It materially increased Plaintiff's commute and the practical consequences of transportation problems.

When Plaintiff's vehicle failed shortly after the transfer, he was unable to reliably make the newly imposed commute. Plaintiff alleges that the vehicle failure must be considered together with the preceding employment conditions and transfer decision.

Plaintiff pleads constructive discharge in the alternative. Even if the Court concludes constructive discharge is not adequately pleaded, Plaintiff maintains his independent claims based on the discrete adverse actions occurring before the end of employment.

**XI. DAMAGES AND RELIEF**

As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost hours, lost wages, lost earning capacity, emotional distress, humiliation, financial hardship, and other damages recoverable under applicable law.

Plaintiff seeks all relief authorized by the ADA, Title VII to the extent applicable, and the ADEA, including back pay, equitable relief, compensatory damages where authorized, punitive damages where authorized, reinstatement or front pay as appropriate, correction of employment records, costs, and any other relief the Court deems proper.

Plaintiff requests a jury trial on all issues triable by jury.

**XII. PRAYER FOR RELIEF**

A. Accept and file this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

B. Deny or otherwise dispose of Defendant's September 3, 2026 Motion to Dismiss as superseded by this amended pleading, or evaluate the amended pleading under the applicable Rule 12 standard.

C. Enter judgment in Plaintiff's favor on the claims proven at trial.

D. Award back pay, lost wages, lost earning capacity, and other economic damages.

E. Award compensatory and punitive damages to the extent authorized by law.

F. Award appropriate equitable relief, including reinstatement or front pay where legally available.

G. Award costs and any attorney's fees permitted by applicable law.

H. Grant such other and further relief as the Court deems just and proper.

**VERIFICATION**

I, Jimmy Wilson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in this First Amended Complaint are true and correct to the best of my personal knowledge, information, and belief, except as to matters expressly pleaded on information and belief.

Executed on Sept 18, 2026, in Tyler, Texas.

/s/ Jimmy Wilson
Jimmy Wilson
Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on Sept. 18, 2026, I served a true and correct copy of Plaintiff's First Amended Complaint through the Court's CM/ECF system, which provides electronic notice to counsel of record.

/s/ Jimmy Wilson
Jimmy Wilson
Plaintiff, Pro Se