FILED

NOV 17 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

JIMMY WILSON, Plaintiff,
v.
BROOKSHIRE GROCERY COMPANY d/b/a FRESH BY BROOKSHIRE'S, Defendant.

CIVIL ACTION NO. 6:26-CV-00373-KNM
JURY DEMANDED

# PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Jimmy Wilson, proceeding pro se, files this Proposed Second Amended Complaint against Defendant Brookshire Grocery Company d/b/a FRESH by Brookshire's ("Brookshire" or "Defendant"). Plaintiff alleges facts based on his personal knowledge and information reasonably available to him. This proposed pleading is submitted with a request for leave to amend under Federal Rule of Civil Procedure 15(a)(2). It is intended to replace the First Amended Complaint in its entirety if the Court grants leave.

## I. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

2. Plaintiff pursued the Equal Employment Opportunity Commission ("EEOC") process and received a Notice of Right to Sue. Plaintiff brings claims only to the extent they are within the scope of the EEOC charge and the resulting right-to-sue process. The precise scope of the charge and notice controls any exhaustion question.

3. Venue is proper in this District because the employment events alleged occurred in Tyler and Longview, Texas, and Defendant conducts business in this District.

## II. PARTIES

4. Plaintiff Jimmy Wilson is an adult resident of Tyler, Smith County, Texas. During the relevant period, he worked for Defendant as a cook at FRESH by Brookshire's Store No. 801 in Tyler and later at Store No. 803 in Longview.

5. Defendant Brookshire Grocery Company d/b/a FRESH by Brookshire's was Plaintiff's employer during the events alleged and is responsible for the acts and omissions of its employees and agents within the scope of their employment, as provided by law.

## III. FACTUAL ALLEGATIONS

### A. Disability and treatment

6. Plaintiff was over 40 years old during the events alleged. He was approximately 67 years old in 2025 and 68 years old in 2026.

7. Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder by Andrews Center Behavioral Healthcare. Plaintiff received treatment for these conditions.

8. Plaintiff experienced increased PTSD symptoms when he felt followed or watched and in crowded environments. These situations could cause confusion and make it more difficult for him to cope and function at work. Plaintiff alleges these symptoms affected his ability to think clearly and manage ordinary workplace interactions in those circumstances. Plaintiff does not allege that every activity was always limited; the effects depended on the circumstances.

9. Plaintiff was able to perform his cook job. He sought schedule flexibility connected to treatment and his medical limitations. He was not asking to be excused from performing the essential duties of the job.

### B. March 2025 medical schedule request and reduction in hours

10. In March 2025, following advice from his treatment provider, Plaintiff asked for Fridays and Sundays off so he could attend therapy, counseling, and treatment appointments.

11. Plaintiff says he provided the therapist's medical recommendation to kitchen managers Jimmy and Sandro/Sondro. Plaintiff also explained the medical reason for the requested schedule. The exact spelling of the second manager's name should be confirmed against Brookshire's records before filing.

12. Plaintiff was told that the store was too busy to provide the requested Friday-and-Sunday schedule. Plaintiff was also told that his pay would be reduced if he requested those days off. General Manager Robert Ring told Plaintiff that his pay would be reduced. Plaintiff understood this as a response to his request for medical schedule flexibility.

13. Plaintiff separately requested Sunday off for a religious reason, and Brookshire granted that separate Sunday request. Plaintiff distinguishes that religious request from the earlier medical/therapy request. Plaintiff does not claim that an employer must pay wages for hours not worked.

14. After these events, Plaintiff's regular schedule was reduced from approximately five days per week to approximately three days per week. This reduction was greater than simply removing one Sunday shift and reduced Plaintiff's hours and earnings.

15. Plaintiff understood that a younger coworker received workdays or hours that had previously been part of Plaintiff's schedule. Plaintiff will identify the coworker and the relevant dates more specifically if those details can be confirmed through records or discovery.

16. Kitchen Manager Edith implemented or changed the schedule. Plaintiff also identifies Jimmy and Sandro/Sondro as managers involved in the scheduling circumstances. General Manager Robert Ring knew of the schedule issue and discussed the reduction in pay with Plaintiff.

**C. Age-related comments and public treatment**

17. On or about March 30, 2025, at Store No. 801, Plaintiff personally heard workplace comments calling him "old" and "fat" and telling him to lose weight. Plaintiff found these comments humiliating. Plaintiff alleges that managers Jimmy and Sandro/Sondro were present, aware of, or allowed the comments to occur. Plaintiff does not allege that either manager personally spoke the words unless the evidence establishes that fact.

18. Plaintiff was also publicly reprimanded or confronted concerning attendance and tardiness in circumstances he believed were related to his medical condition. Plaintiff complained about the way his medical limitations and attendance were treated.

19. Plaintiff observed that other employees received different treatment concerning attendance and scheduling. Plaintiff alleges that the difference in treatment contributed to his concern that he was being treated unfairly because of his age and medical condition.

**D. Written complaints to Human Resources and EEOC activity**

20. On July 21, 2025, Plaintiff submitted a written complaint to Brookshire Human Resources. He raised concerns about discrimination, retaliation, attendance treatment, his medical condition, scheduling, reduced hours, public reprimands, and the lack of accommodation. Plaintiff explained that his health conditions contributed to lateness or absences and identified medical documentation.

21. On July 28, 2025, Plaintiff submitted another written HR complaint requesting an investigation into schedule changes, reduced hours, public confrontations, different disciplinary treatment, and the failure to accommodate his medical condition.

22. Robert Ring was the General Manager at the time of the July 2025 complaints. Plaintiff alleges that Ring knew about the accommodation and scheduling concerns and had discussed the reduced-pay issue with Plaintiff. Plaintiff also communicated with HR personnel, including Brenda Dugan, about the complaints.

23. On or about July 30, 2025, Plaintiff pursued EEOC relief concerning discrimination and retaliation. Plaintiff later received a Notice of Right to Sue. The EEOC charge and notice should be consulted to determine the precise claims exhausted.

**E. Increased scrutiny and misconduct accusation**

24. After Plaintiff complained internally and pursued EEOC relief, he experienced increased scrutiny at work, including closer observation of his breaks and restroom periods. Plaintiff believed this scrutiny was connected to his complaints and his medical condition.

25. Plaintiff was accused of sexual misconduct or sexual harassment. Plaintiff denies engaging in sexual harassment. To Plaintiff's knowledge, Brookshire did not disclose the factual basis or evidence supporting the accusation, and Plaintiff did not receive a disciplinary write-up

establishing that he committed misconduct. Plaintiff includes this event as part of the sequence of scrutiny and treatment, not as a separate claim that he was sexually harassed.

**F. Transfer to Longview and late closing schedule**

26. On or about February 13, 2026, General Manager Mike Yates authorized Plaintiff's transfer from Store No. 801 in Tyler to Store No. 803 in Longview. The Longview store was approximately 50 miles from Plaintiff's home in Tyler and substantially increased his commute.

27. Plaintiff received a voicemail concerning the transfer. The voicemail stated that Store No. 803 had approved his schedule and instructed him to report at 8:00 a.m. on Saturday. The voicemail did not tell Plaintiff that he had been terminated, suspended, or formally disciplined, and it did not identify a misconduct finding or policy violation.

28. At Store No. 803, Plaintiff worked closing hours and finished work much later. He then had to travel approximately 50 miles home from Longview to Tyler. The combination of late closing hours and the lengthy trip home made it more difficult for Plaintiff to cope with his PTSD symptoms.

29. Plaintiff specifically told Chef Rocky Wright and Chef Scott that he had PTSD and that the late closing hours and long commute were making his symptoms worse. Plaintiff personally communicated these concerns to them. They therefore knew that Plaintiff was reporting disability-related difficulty with the schedule and commute.

30. Around February 27, 2026, Chef Rocky Wright told Plaintiff directly that Plaintiff was being monitored. Plaintiff understood Rocky to identify manager Monica as the person who had instructed Rocky to monitor him. Plaintiff personally heard Rocky's statement.

31. Around March 1, 2026, Chef Scott directly asked Plaintiff to provide proof that he had PTSD. Plaintiff had already disclosed the condition and had told Scott that the late schedule and commute were making his symptoms worse.

32. Plaintiff alleges that the monitoring statement and the request for proof of PTSD contributed to his distress and demonstrate that supervisors at Store No. 803 knew that he was reporting PTSD. Plaintiff does not allege that these later statements prove, by themselves, what Mike Yates knew when he authorized the February 13 transfer.

**G. End of employment**

33. In early March 2026, Plaintiff's vehicle broke down. Plaintiff's employment ended shortly afterward. Plaintiff states that he resigned by telephone on or about March 7, 2026. The vehicle breakdown was the immediate transportation problem, but Plaintiff alleges that the new 50-mile commute, late closing schedule, reduced hours and earnings, monitoring, and other workplace treatment formed the broader circumstances leading to his departure.

34. Plaintiff does not allege that Brookshire caused his vehicle to break down. He alleges that the transfer to a distant store and the late closing schedule made the transportation problem substantially harder to manage.

35. Plaintiff pleads constructive discharge in the alternative. If the Court concludes that the facts do not meet the demanding standard for constructive discharge, Plaintiff asks that his separate claims based on earlier employment actions be considered independently.

## IV. COUNT ONE — ADA DISABILITY DISCRIMINATION

36. Plaintiff incorporates paragraphs 1 through 35.

37. Plaintiff had PTSD and Major Depressive Disorder, which are mental impairments. Plaintiff alleges that his PTSD symptoms substantially limited his ability to think clearly or concentrate in circumstances involving perceived monitoring or crowded environments. Plaintiff also alleges that Brookshire knew of his reported condition through his disclosures, treatment recommendation, schedule request, HR complaints, and later direct conversations at Store No. 803.

38. Plaintiff was qualified to perform the essential functions of his cook position, with reasonable accommodation where needed.

39. Plaintiff alleges that Brookshire subjected him to adverse treatment, including a substantial reduction in scheduled workdays and earnings and a transfer to a much more distant store, in circumstances supporting an inference of disability discrimination. Plaintiff recognizes that the transfer decisionmaker's precise knowledge and the reasons for the transfer are matters that must be established from the evidence.

## V. COUNT TWO — ADA FAILURE TO ACCOMMODATE

40. Plaintiff incorporates paragraphs 1 through 35.

41. Plaintiff requested a schedule accommodation in March 2025 based on treatment-provider advice and his need to attend therapy, counseling, and medical treatment. He requested Fridays and Sundays off and says he provided the therapist's recommendation to kitchen management.

42. Brookshire knew of the medical reason for the request. Management said the store was too busy to provide the requested schedule, and Plaintiff was told that his pay would be reduced. Plaintiff alleges that Brookshire did not engage in a meaningful discussion of workable alternatives before his schedule was reduced from approximately five days to approximately three days per week.

43. Plaintiff recognizes that an employer is not necessarily required to provide the exact schedule requested. His claim is that Brookshire failed to provide a reasonable accommodation or meaningfully consider alternatives after receiving notice of his medical need.

44. The separate Sunday religious request was later granted. That separate event did not resolve the earlier medical/therapy request or the need for a workable schedule accommodating treatment.

## VI. COUNT THREE — ADA RETALIATION

45. Plaintiff incorporates paragraphs 1 through 35.

46. Plaintiff engaged in protected activity by requesting a medical accommodation and by complaining to management and HR that Brookshire was failing to accommodate his medical condition and treating him unfairly because of that condition.

47. Brookshire's managers and HR personnel received or were informed of Plaintiff's accommodation request and written complaints. Plaintiff alleges that the subsequent scrutiny and other adverse treatment occurred in the context of those protected complaints.

48. Plaintiff alleges that the schedule reduction followed his March 2025 accommodation request. The July 2025 HR and EEOC complaints occurred later and cannot have caused the earlier schedule reduction. Plaintiff relies on the March accommodation request as the protected activity potentially related to that earlier reduction.

49. Plaintiff further alleges that increased scrutiny and the later treatment at Store No. 803 occurred after his written complaints. Plaintiff acknowledges that he does not presently know everything communicated internally to Mike Yates before the transfer and seeks discovery concerning what the transfer decisionmaker knew and the reasons for the transfer.

## VII. COUNT FOUR — ADEA AGE DISCRIMINATION

50. Plaintiff incorporates paragraphs 1 through 35.

51. Plaintiff was over 40 years old and was within the ADEA's protected age group.

52. On or about March 30, 2025, Plaintiff personally heard comments calling him "old" and "fat" and telling him to lose weight. Plaintiff alleges that managers involved in the scheduling circumstances were present, aware of, or allowed the comments.

53. Plaintiff alleges that the age-related comments occurred during the same period as the reduction in his scheduled days and earnings. He seeks discovery concerning the speakers, scheduling decisions, younger employees who received available shifts, and Brookshire's stated reasons for the schedule change.

54. Plaintiff alleges that age was a motivating factor in the challenged treatment and, to the extent required by the ADEA, a but-for cause of an adverse employment decision. Plaintiff recognizes that the comments alone do not automatically establish an ADEA violation.

## VIII. COUNT FIVE — HOSTILE WORK ENVIRONMENT BASED ON AGE AND DISABILITY

55. Plaintiff incorporates paragraphs 1 through 35.

56. Plaintiff alleges unwelcome conduct that included age-related insults, public humiliation, heightened monitoring, disability-related questioning, and the request that he prove his PTSD after he had disclosed it.

57. Plaintiff alleges that the age-related insults were expressly connected to his age and that the disability-related conduct was connected to his disclosed medical condition. Plaintiff complained to management and HR about the treatment.

58. Plaintiff alleges that the conduct, considered as a whole and in its workplace context, caused humiliation and distress and interfered with his ability to work. Plaintiff acknowledges that the Court will determine whether the alleged conduct was sufficiently severe or pervasive and sufficiently connected to a protected characteristic to state a hostile-work-environment claim.

## IX. CONSTRUCTIVE DISCHARGE ALLEGATIONS IN THE ALTERNATIVE

59. Plaintiff incorporates paragraphs 1 through 35.

60. Plaintiff alleges that the cumulative conditions included the substantial reduction in hours and earnings, age-related humiliation, increased scrutiny, disability-related questioning, transfer to a store approximately 50 miles from home, and late closing hours that required a long trip home while he was experiencing worsening PTSD symptoms.

61. Plaintiff told Chef Rocky Wright and Chef Scott that he had PTSD and that the late closing schedule and long commute were making his symptoms worse. Plaintiff alleges that the work and commuting conditions, viewed together with the preceding treatment, materially contributed to his decision to resign.

62. Plaintiff acknowledges that the vehicle breakdown was a significant immediate event and was not caused by Brookshire. He pleads constructive discharge only in the alternative and does not ask the Court to treat the vehicle breakdown alone as an employer-created condition.

63. Even if the Court concludes that constructive discharge is not adequately pleaded, Plaintiff maintains his claims based on the discrete employment actions that occurred before his employment ended.

## X. DAMAGES AND RELIEF

64. Plaintiff alleges that he suffered lost work hours, lost wages, reduced earnings, emotional distress, humiliation, transportation hardship, and other damages recoverable under the applicable statutes.

65. Plaintiff seeks the remedies authorized by law, including back pay, appropriate equitable relief, compensatory damages where authorized, punitive damages where authorized, reinstatement or front pay where appropriate, costs, and any other relief the Court deems just and proper.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Grant Plaintiff leave to file this Second Amended Complaint;

B. Accept this Second Amended Complaint as the operative pleading if leave is granted;

C. Deny Defendant's pending motion to dismiss, or allow Plaintiff's claims to proceed under the operative pleading;

D. Enter judgment in Plaintiff's favor on the claims proven at trial;

E. Award back pay, lost wages, and other economic damages recoverable by law;

F. Award compensatory or punitive damages only to the extent authorized by the applicable statutes;

G. Award appropriate equitable relief, including reinstatement or front pay where legally available;

H. Award costs and any other relief permitted by law; and

I. Conduct a jury trial on all issues triable by jury.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION

I, Jimmy Wilson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in this Proposed Second Amended Complaint are true and correct to the best of my personal knowledge, information, and belief, except for matters expressly stated on information and belief.

Executed on November 17, 2026, in Tyler, Texas.

______________________________

Jimmy Wilson
Plaintiff, Pro Se
416 West Woldert Street, Apartment A
Tyler, Texas 75702
Telephone: (469) 826-9979
Email: wilsonjimmy58@yahoo.com

## CERTIFICATE OF SERVICE

I certify that on November 17, 2026, I served a true and correct copy of this Proposed Second Amended Complaint on counsel of record for Defendant through the Court's CM/ECF system, if and when this pleading is authorized for filing, or by another method permitted by the Court's rules.

Jimmy Wilson

Jimmy Wilson
Plaintiff, Pro Se